UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER ARTZ,<br><br>                Plaintiff,<br><br>        v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC., a California corporation; MARIA CHARDONNAY DOE, an individual; and DOES 1 THROUGH 100, inclusive,<br><br>                Defendants. | No.  2:23-cv-01599-DJC-DB<br><br>ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR COSTS AND FEES |

Plaintiff Jennifer Artz brought a case in state court against Defendants Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta"); Maria Chardonnay Doe ("Maria Doe"), an individual; and 100 Doe defendants, alleging various violations of California's whistleblower statute, anti-workplace discrimination laws, and anti-disability discrimination laws, all arising from Plaintiff's employment with Ulta.  Ulta removed the matter to federal court, and Plaintiff seeks to remand the case back to state court, arguing that this Court lacks subject matter jurisdiction.  For the reasons set forth below, the Court GRANTS Plaintiff's Motion to Remand (ECF No. 8) because there is not complete diversity of citizenship but DENIES Plaintiff's Request for Costs and Fees.

**BACKGROUND**

**I.     Factual Background**

Plaintiff was employed by Ulta as a Service Manager for about four years until Ulta terminated Plaintiff's employment on or about September 3, 2021. (*See* Compl. for Damages (ECF No. 1-2 at 5–57) ¶ 2 ("Complaint" or "Compl.").) The crux of Plaintiff's Complaint and causes of action against Defendants are that Plaintiff suffers from bipolar disorder and requires a stable work schedule to help decrease her episodes, and that Defendants denied Plaintiff a stable work schedule despite Plaintiff raising these issues with Defendants. (*See* Pl.'s Mem. of P. and A. in Supp. of Pl.'s Mot. for Remand and Req. for Att'y's Fees, Costs, and Sanctions in the Amount of $7,140.00 (ECF No. 8) at 2–4 ("Motion" or "Mot."); *e.g.*, Compl. ¶¶ 53–61.) In addition to denying Plaintiff a stable schedule, Plaintiff complains of an unsafe work environment caused by nightshifts where only two employees were on-shift during which customers would argue with each other, leading to injuries to Plaintiff's arm and three bulging discs in her back that she suffered after breaking up a fight on one occasion (*see, e.g.*, Compl. ¶ 58); and a demeaning work environment in which Defendants dismissed Plaintiff's concerns, expressed anger that she raised these concerns, and ultimately suspended Plaintiff and terminated her employment as a result (*see, e.g.*, *id.* ¶¶ 17–18, 58, 81).

**II.    Procedural Background**

Plaintiff filed the Complaint in Solano County Superior Court on June 22, 2023. (*See* Compl.; Mot. at 5.) Ulta removed the matter to federal court based on diversity jurisdiction on August 2, 2023. (*See* Ulta's Not. of Removal of Civil Action Under 28 U.S.C. §§ 1332, 1441(b), and 1446 (ECF No. 1) at 12 ("Removal Notice" or "Removal Not.").) Plaintiff moved to remand the matter back to state court on September 1st. (*See* Mot.) Ulta filed its Opposition simultaneously with its Request for Judicial Notice of: (1) the discrimination complaint Plaintiff filed with the California Department of Fair Employment and Housing and related communications regarding the discrimination complaint, and (2) three other exhibits containing cases in which plaintiffs received

non-economic or emotional distress damages exceeding $75,000.  (*See* Ulta's Opp'n to Pl.'s Mot. (ECF No. 12) ("Opposition" or Opp'n"); ECF No. 13 (providing Ulta's Request for Judicial Notice, which the Court grants[1]).)  Plaintiff filed her Reply on September 25th.  (*See* Pl.'s Reply Brief in Supp. of Pl's Mot. (ECF No. 19) ("Reply").)  The Court heard oral arguments on October 26, 2023, where Attorney Alisa Khousadian appeared for Plaintiff, and Attorney Lisa C. Hamasaki appeared for Ulta.  (*See* ECF No. 24.)  The matter is now fully briefed.

## DISCUSSION

### I.   Legal Standard

A case may be removed to federal court if that court would have original jurisdiction over the matter, which generally requires asserting federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332.  *See* 28 U.S.C. § 1441; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (citation omitted)).  "However, it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Hunter*, 582 F.3d at 1042 (quoting *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (citation omitted)) (internal quotation marks and alterations omitted).  As a result, "[t]he 'strong presumption against removal jurisdiction means that the defendant always bears the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court."  *Id*. (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*) (internal quotation marks omitted)).

---

[1] Ulta's Request for Judicial Notice (ECF No. 13) is GRANTED because this Court must take judicial notice of materials when provided the means for so doing.  *See* Fed. R. Evid. 201(c)(2).  The Court takes judicial notice of Exhibits B, C, and D, as they are publicly accessible cases, but the Court does not take judicial notice of the reasoning or conclusions in those cases – only taking notice of the damages amount.  The Court also takes judicial notice of Exhibit A, as it contains a complaint before an administrative agency, but the Court declines to take judicial notice of the communications related to the complaint contained in Exhibit A, as those are private communications not capable of review and not generally known within this Court's jurisdiction.  *See* Fed. R. Evid. 201(b).

## II. Analysis

### A. Motion to Remand

#### 1. Amount in Controversy

Plaintiff tries to dispute the estimate that Ulta provided in its Removal Notice that totals well over $75,000 based on Plaintiff's potential to recover: (1) lost earnings since her termination on or about September 3, 2021; (2) damages for emotional distress brought by plaintiffs in similar cases; and (3) attorney's fees. (*See* Removal Not. ¶¶ 21–36; *e.g.*, Reply at 6–8.) However, whether Plaintiff tried to mitigate her damages and whether Ulta "fail[ed] to show the plethora of cases where a plaintiff loses at an employment trial," or "cases where their attorneys were awarded less than $75,000[,]" (Reply at 7–8,) is irrelevant for this Court's decision because the Court may use the defendant's, Ulta's, viewpoint of costs to determine whether the amount-in-controversy more likely than not will exceed $75,000. *See In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." (citing *Ridder Bros. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944))). Based on the lost earnings and potential to recover non-economic or emotional distress damages exceeding $100,000, the Court finds that it is more likely than not that the total pecuniary loss for Ulta will be greater than $75,000.

#### 2. Fraudulent Joinder or Sham Defendant

The heart of the dispute for the Motion is whether "MARIA CHARDONNAY DOE" who is referred to as "Maria DOE" throughout the Complaint is a sham defendant or fraudulently joined party whose citizenship should be ignored for purposes of establishing complete diversity and subject matter jurisdiction. (*See* Compl. ¶ 4; Removal Not. ¶¶ 16–18; Mot. at 7–12; Opp'n at 4–9; Reply at 2–6.) Under the doctrine of "fraudulent joinder" or "sham defendants," a federal court may ignore a non-diverse defendant's citizenship if either of two stringent standards are met. *See*

*Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter*, 582 F.3d at 1046 (citations omitted)).

The Ninth Circuit has held that "[t]here are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC*, 889 F.3d at 548  (quoting *Hunter*, 582 F.3d at 1044 (quoting *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004))).  Ulta does not allege actual fraud and instead relies on the second method of establishing fraudulent joinder, which requires showing that there is *no* possibility that a state court would find that the complaint states a cause of action against the non-diverse defendant.  *See id.*

Ulta "bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'"  *Grancare, LLC*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046 (citations omitted)) (alteration included).  For Ulta must not only establish that Plaintiff could not state a claim under Rule 12(b)(6) against the allegedly sham defendant.  *See id.* at 549 ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined.").  The Court must also determine "whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend."  *Id.* at 550.

For instance, the Ninth Circuit has previously held that defenses that are generally detached from the merits of the underlying cause of action are sufficient to prove fraudulent joinder.  *See Grancare, LLC*, 889 F.3d at 549 ("A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.").  In *Grancare, LLC*, the Ninth Circuit specifically cited cases where fraudulent joinder was found based upon a successful statutes of limitations challenge, *see id.* at 548 (first citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998); and then citing *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)), based on state law privileges, *see id.*

(citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)), or where it was clear that the sham defendant could not be held liable under state law, such as where the sham defendants were sued under a contract to which the actual defendant was not a party and only the signatory to a contract could be liable under California law, *see id.* (first citing *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (citations omitted); and then citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426–27 (9th Cir. 1989)).  The Ninth Circuit also noted that it has "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.* at 538-49 (citing *Hunter*, 582 F.3d at 1046)).

Ulta ultimately contends that Plaintiff fails to state a claim for harassment against Maria Doe, Plaintiff's supervisor while working at Ulta, as opposed to a discrimination claim, because the acts alleged in the Complaint mostly relate to personnel and administrative management decisions and the acts that could constitute harassment do not amount to a hostile work environment.  (*See* Opp'n at 5-7.)  To establish a *prima facie* case of hostile work environment harassment, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." *Galvan v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 549, 563 (2019).  A hostile work environment claim requires proving that the "harassing behavior is *pervasive* or *severe*." *Hughes v. Pair*, 46 Cal. 4th 1035, 1042 (2009) (citing *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 462 (2005)).  The only disputed issue here is whether the alleged conduct is sufficiently severe or pervasive to be abusive.

A hostile work environment requires the conduct to be both subjectively and objectively abusive, such that a reasonable person with the plaintiff's protected characteristic would find the environment hostile or abusive.  *See Faragher v. City of*

*Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)); *e.g.*, *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quoting *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21–22), *as amended* (Apr. 24, 1995)); *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (citing *Fuller*, 47 F.3d at 1527).  Here, Plaintiff pleads that she subjectively believed that the work environment was intolerable because Plaintiff complained that the unsafe workplace triggered her episodes (*see* Compl. ¶ 56(c)) and shared her workplace concerns on several occasions (*see, e.g., id.* ¶ 17), stating that "[i]t is going to take someone to really get hurt for someone to understand it's serious." (*Id.* ¶ 17(b).)

Even if the subjective component is met, the Court must still find that Plaintiff establishes the objective component. *Faragher*, 524 U.S. at 788.  "In evaluating the objective hostility of a work environment, the factors to be considered include the 'frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (quoting *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Harris*, 510 U.S. at 23)).  There is a sliding scale for establishing a hostile work environment that depends on the severity and pervasiveness of the conduct, with more of one requiring less of the other.  *See, e.g., Brooks*, 229 F.3d at 925 (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (citation omitted)).  "A recurring point in the[ ] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).  Nonetheless, "[t]he Supreme Court has followed a 'middle path' with regard to the level of hostility or abuse necessary to establish a hostile work environment[,]" holding that "[i]t is enough 'if such hostile conduct pollutes the victim's workplace, making it

1  more difficult for her to do her job, to take pride in her work, and to desire to stay on
2  in her position.'" *McGinest*, 360 F.3d at 1113 (quoting *Harris*, 510 U.S. at 21) (citing
3  *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)).

4      Ulta argues that the only legally sufficient allegations are those claiming that
5  "[Plaintiff] was mocked by members of management (including DOE Defendant) and
6  that they often rolled their eyes at her." (Reply at 6.)  The Court agrees that, standing
7  alone, this would be insufficient to state a claim.  However, Plaintiff also complained
8  about her supervisor, Maria Doe, demanding Plaintiff to cover shifts she was not
9  scheduled to work, which happened on multiple occasions, and reprimanding her for
10 requesting accommodations and raising the issue through an email to Maria Doe's
11 superiors.  (*See* Reply at 5; *e.g.*, Compl. ¶¶ 18(b), 58(c)–(d).)  While Ulta is correct that
12 these are generally personnel and management decisions, California courts will
13 occasionally use such decisions as a basis for liability where they "have a secondary
14 effect of communicating a hostile message.  This occurs when the actions establish a
15 widespread pattern of bias." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009)
16 (citing *Miller v. Dep't of Corr.*, 36 Cal. 4th 446 (2005)), *as modified* (Feb. 10, 2010).
17 While the Court struggles to see a "widespread pattern of bias" in the complaint as
18 currently pled, it may well be that the Plaintiff can add additional allegations if further
19 discovery is permitted.

20     While the current complaint might not survive a motion to dismiss under
21 Federal Rule of Civil Procedure 12(b)(6), that is not the standard for determining
22 fraudulent joinder.  *See Grancare, LLC*, 889 F.3d at 549.  Rather, as the Ninth Circuit
23 has recognized, fraudulent joinder and removal should focus on procedural defenses
24 and immunities that are distinct from the underlying merits of the claim.  *See, e.g.*,
25 *Ritchey*, 139 F.3d at 1318–19 (citations omitted); *Grancare, LLC*, 889 F.3d at 548–49
26 (collecting cases); *also id.* at 549 ("A standard that equates fraudulent joinder with
27 Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.").
28 Therefore, "[a] claim against [Maria Doe] may fail under Rule 12(b)(6), but [Maria Doe]

has not necessarily been fraudulently joined." *Grancare, LLC*, 889 F.3d at 549. "Consequently, if a defendant simply argues that plaintiff has not pled sufficient facts to state a claim, the heavy burden of showing fraudulent joinder has not been met." *Ontiveros v. Michaels Stores, Inc.*, No. CV 12-09437-MMM-FMOX, 2013 WL 815975, at *5 (C.D. Cal. Mar. 5, 2013) (collecting cases). "A defendant is not a fraudulently joined or sham defendant simply because the facts and law may further develop in a way that convinces the plaintiff to drop that defendant, and this Court cannot find that [Maria Doe] is a fraudulently joined or sham defendant." *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009).

Here, Ulta has failed to provide any such procedural bar, immunity, or statute of limitation to preclude a claim against Maria Doe and has only argued that Plaintiff fails to state a claim against her. As a result, Ulta has failed "to show that [Maria Doe] . . . cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; *see also id.* at 1319 (collecting cases where joinder was only found fraudulent upon a showing that no cause of action could be stated); *Hunter*, 582 F.3d at 1046 ("As the Eleventh Circuit has stated, 'if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" (quoting *Tillman*, 340 F.3d at 1279)).

Although the Court finds that the amount-in-controversy more likely than not will exceed $75,000, the Court finds that Plaintiff has alleged a potentially viable cause of action for harassment against Maria Doe. Thus, her alleged domicile in California destroys complete diversity of citizenship. As a result, this Court lacks subject matter jurisdiction, so the Court GRANTS Plaintiff's Motion to Remand (ECF No. 8).

**B.     Sanctions Motion and Motion for Costs and Attorney's Fees**

Plaintiff also seeks an award of "costs and any actual expenses, including attorney[']s fees, incurred as a result of the removal[ ]" following multiple communications trying to persuade Ulta on the reasonableness of removal. (Mot. at

14 (first quoting 28 U.S.C. § 1447(c); and then citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005)); *see also* Mot. Exs. A–D (ECF No. 18-2 at 5–18) (providing a copy of four communications sent between 8/4–8/11/2023 regarding whether removal to federal court was proper).) Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. *Grancare, LLC*, 889 F.3d at 552 (citing *Martin*, 546 U.S. at 141). When assessing the objective reasonableness of the removal request, the Ninth Circuit has recognized that the degree of clarity in the law at the time of removal is a relevant factor. *See id.* (citing *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1063 (9th Cir. 2008)).

      Here, the Court finds that Ulta had an objectively reasonable basis for seeking removal based on the alleged failure to state a claim against Marie Doe for harassment. Although administrative and supervisory decisions can be used to establish harassment by a supervisor, *see, e.g.*, *Roby*, 47 Cal. 4th at 708 (citing *Miller*, 36 Cal. 4th at 446), the Court finds that Ulta reasonably relied on precedent indicating that "[a] recurring point in the[ ] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). While Ulta failed to meet the high burden imposed on defendants claiming fraudulent joinder, which essentially requires that there be no possibility that the plaintiff's cause of action could succeed against the sham defendant, Ulta's failure is not enough to find that Ulta did not have an objectively reasonable basis for seeking removal.

      Accordingly, the Court DENIES Plaintiff's request for costs incurred under 28 U.S.C. § 1447(c).

////

////

////

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Plaintiff's Motion to Remand (ECF No. 8) under 28 U.S.C. § 1447 because there is not complete diversity of citizenship. However, the Court DENIES Plaintiff's Request for Attorney's Fees, Costs, and Sanctions in the Amount of $7,140.00 (ECF No. 8).

The Clerk of Court is DIRECTED to REMAND the case to the Superior Court of California County of Solano and CLOSE this case.

IT IS SO ORDERED.

Dated:   **November 17, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – Artz.23cv1599.MTR